UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| DAVID HOHSFIELD,<br><br>Plaintiff,<br><br>v.<br><br>OFFICER CRAIG STAFFIERI, et al.,<br><br>Defendants. | Civil Action No.  21-19295 (FLW)<br><br>MEMORANDUM AND ORDER |

Plaintiff David Hohsfield, currently incarcerated at South Woods State Prison, has filed a Complaint, alleging violations of his civil rights pursuant to 42 U.S.C. § 1983, and an application to proceed *in forma pauperis* ("IFP application").  As this time, the Court will grant the IFP application, and screen the Complaint for dismissal pursuant to 28 U.S.C. § 1915(e)(2)(B).

Federal law requires the Court to screen Plaintiff's Complaint for *sua sponte* dismissal prior to service, and to dismiss any claim if that claim fails to state a claim upon which relief may be granted under Fed. R. Civ. P. 12(b)(6) and/or to dismiss any defendant who is immune from suit.  *See* 28 U.S.C. § 1915(e)(2)(B).

Plaintiff has sued Monroe Township Police Officers Craig Staffieri, Nicolas Marchisello, and Michael Gabbianelli (collectively "Officer Defendants"), the Township of Monroe, and Walmart loss prevention employee Louis DeMatteo in connection with Plaintiff's arrest at Walmart on September 12, 2020, and his subsequent prosecution.  *See* Complaint at 9-10.

Plaintiff alleges that he was shopping for clothes at Walmart when he was approached and arrested by the Officer Defendants.  Plaintiff was charged with lewdness and endangering the welfare of a minor.  *Id.* at 11.

After Plaintiff was transported to the police station, Detective Darcangelo, who is not listed as a Defendant, informed Plaintiff that DeMatteo called the police to report that Plaintiff was acting suspiciously and attempting to expose himself to other customers. *See id*. at 11. The detective showed Plaintiff a still photo, which showed a shadow near Plaintiff's groin area, and asked Plaintiff if he could have exposed himself accidentally. *Id.* Plaintiff denied exposing himself. *Id.* Plaintiff alleges that the photo appeared altered, possibly through "photo shop" or a "deep fake app." *Id.* The detective also asked Plaintiff why his fingers were inside his waistband in the photo, and Plaintiff explained that he had a burn injury and placed his fingers in his waistband to prevent the waistband from rubbing his skin. *Id.* at 12. Plaintiff also showed the burn to the detective.[1] *Id.*

After Plaintiff was fingerprinted, the Officer Defendants discovered that Plaintiff was subject to "Megan's Law" and on Parole Supervision for Life ("PSL"). The Officer Defendants began to verbally abuse Plaintiff and tell Plaintiff that people like him "should be shot" and "put out of their misery." *Id.* The Officer Defendants insisted that Plaintiff committed the crime because he was a sex offender. Plaintiff maintained his innocence, but could not prove his innocence until six months later when his attorney received the surveillance video. *Id.* According to Plaintiff's attorney, the surveillance video received in discovery did not show Plaintiff exposing himself; instead, the video showed only a shadow near Plaintiff's groin area. *Id.*

Plaintiff alleges that "[d]espite [D]efendants having this exculpatory [video surveillance] evidence [Defendants] with held [sic] it and still chose to arrest and prosecute Plaintiff for no

---

[1] Plaintiff also alleges that he provided medical records of his burn injury to police.

other reason but being a registered sex offender, and as such must be guilty of the charged offense." *Id.*

Plaintiff alleges that Officer Staffieri "testified" that he and Officer Marchisello observed Plaintiff committing the offense on the store's surveillance system. *Id.* at 13. Plaintiff alleges that Sgt. Gabbianelli was the supervising officer on the scene and that he too testified under oath that he viewed Plaintiff committing the offense on the surveillance video. *Id.* Plaintiff appears to assert that the Officer Defendants conspired to present this false testimony in order to prosecute him. Plaintiff also appears to assert that the charges against him are still pending. *See* Complaint at 8.

Plaintiff also alleges that the Township of Monroe ("Township") and the Monroe Township Police Department failed to train and supervise the Defendants. *Id.* at 10-11. Finally, Plaintiff alleges that DeMatteo is liable for reporting him to the police without cause. *Id.* at 11.

The Court construes Plaintiff to assert violations of his constitutional rights pursuant to 42 U.S.C. § 1983.[2] To succeed on a claim under 42 U.S.C. § 1983, a plaintiff must show: (1) the conduct complained of was committed by a person acting under color of state law; and (2) the conduct deprived the plaintiff of a federally secured right. *See, e.g., Moore v. Tartler*, 986 F. 2d 682, 685 (3d Cir. 1983). With respect to the Officer Defendants, the Court construes Plaintiff to allege § 1983 claims for false arrest, false imprisonment, malicious prosecution, and conspiracy. The Court also construes Plaintiff to assert civil rights claims against the Township of Monroe ("Township") and DeMatteo.

---

[2] The Court does not construe any state law claims and would decline to exercise supplemental jurisdiction over any potential state law claims at this time in light of the dismissal of the federal claims.

3

The Court begins with Plaintiff's false arrest and false imprisonment claims against the Officer Defendants. The elements of a false-arrest claim are (1) that an arrest occurred; and (2) that the arrest was made without probable cause. *See Groman v. Twp. of Manalapan*, 47 F.3d 628, 634 (3d Cir. 1995). A claim for false imprisonment may be grounded on a "detention pursuant to [an] arrest" made without probable cause. *See id.* at 636.

Probable cause exists if "at the moment the arrest was made ... the facts and circumstances within [the defendant's] knowledge and of which [he or she] had reasonably trustworthy information were sufficient to warrant a prudent man in believing" that the plaintiff had violated the law. *Hunter v. Bryant*, 502 U.S. 224, 228 (1991) (quoting *Beck v. Ohio*, 379 U.S. 89, 91 (1964)); *see also Orsatti v. N.J. State Police*, 71 F.3d 480, 483 (3d Cir. 1995). As such, the relevant inquiry is not whether the individual <u>actually committed</u> the crime for which he or she was arrested, but whether the officer had probable cause to believe so at the time of the arrest. *See Groman*, 47 F.3d at 634-35. "The probable cause standard thus provides individuals protection 'against unreasonable searches and seizures,' U.S. Const. amend. IV, while simultaneously enabling investigating officers to act quickly—before necessarily obtaining evidence sufficient to prove guilt beyond a reasonable doubt—to effect an arrest." *Dempsey v. Bucknell University*, 834 F.3d 457, 467 (3d Cir. 2016). "[T]he [false arrest] standard does not require that officers correctly resolve conflicting evidence or that their determinations of credibility, were, in retrospect, accurate." *Id.* (citing *Wright v. City of Phila.*, 409 F.3d 595, 603 (3d Cir. 2005)). Moreover, "[i]f an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender." *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001).

Here, Plaintiff alleges that the Officer Defendants arrested him without probable cause because the video surveillance, which Plaintiff later obtained in discovery, allegedly proves that Plaintiff did not expose himself to anyone in the store and instead shows a shadow near Plaintiff's groin area. The Court, however, must consider the totality of the circumstances at the time the Officer Defendants made the arrest to determine whether the Defendant Officers lacked probable cause. Here, Defendant DeMatteo, a loss prevention employee at Walmart, called police to report that Plaintiff was attempting to expose himself to customers at the Walmart store. According to the Complaint, the Officer Defendants subsequently viewed at least some of the surveillance video prior to Plaintiff's arrest and saw a shadow near Plaintiff's groin area as well as Plaintiff's fingers in his waistband. As explained above, the probable cause standard does not require the Defendants to resolve conflicting evidence, *i.e.*, whether the video showed Plaintiff's genitalia or a shadow, correctly. And although Plaintiff has an innocent explanation for the placement of his fingers in his waistband, the Officer Defendants did not have this information at the time they arrested him. Moreover, Plaintiff does not allege any facts to suggest that the Defendants Officers had reason to doubt DeMatteo's reliability or that they were unreasonable to believe that the surveillance video depicted Plaintiff's exposed genitalia.[3] For these reasons, Plaintiff has not sufficiently alleged that he was arrested without probable cause. The Court will

---

[3] Plaintiff's Complaint is confusing in this regard. That is, his Complaint appears to assert the Officer Defendants (and the detective who later questioned him) erroneously believed that the shadow near Plaintiff groin was his exposed genitalia. Plaintiff alleges that his attorney later told him the surveillance video received in discovery does not show Plaintiff exposing himself and merely shows a shadow near Plaintiff's groin. There are insufficient facts addressing whether the Defendants Officers reasonably believed that the shadow was Plaintiff's exposed genitalia prior to arresting Plaintiff. Plaintiff is free to clarify his allegations about the video surveillance if he submits an Amended Complaint.

therefore dismiss without prejudice the false arrest and false imprisonment claims against the Officer Defendants.

Plaintiff also asserts a malicious prosecution claim. The elements of a malicious prosecution claim are as follows: (1) defendant commenced a criminal proceeding; (2) the proceeding terminated in plaintiff's favor; (3) defendant "initiated the proceeding without probable cause;" (4) defendant acted maliciously or with a purpose apart from bringing plaintiff to justice; and (5) plaintiff "suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding. *Johnson v. Knorr*, 477 F.3d 75, 81–82 (3d Cir. 2007). Plaintiff alleges that the Officer Defendants ignored the video surveillance evidence, which allegedly exonerates him, and pursued the prosecution because Plaintiff is a sex offender on PSL and not because he committed a crime. Assuming Plaintiff meets the other elements for malicious prosecution, he has not provided any facts to suggest that the proceeding has terminated in his favor, *i.e.*, that the charges against him have been dismissed. As such, he does not state a claim for malicious prosecution. Moreover, the claim is premature and does not accrue until the pending criminal proceedings terminate in his favor. *Curry v. Yachera*, 835 F.3d 373, 379 (3d Cir. 2016) (explaining that "the statute of limitations [on a malicious prosecution claim] begins to accrue when the termination of criminal proceedings becomes favorable"). For this reason, the malicious prosecution claims are dismissed without prejudice as to the Officer Defendants.[4]

---

[4] To the extent Plaintiff seeks to bring a separate claim against the Officer Defendants for presenting false testimony that claim is likewise dismissed because a trial witness has absolute immunity with respect to any claim based on the witness' testimony. *Briscoe v. LaHue*, 460 U.S. 325, 345 (1983).

The Court will likewise dismiss the § 1983 conspiracy claims against the Officer Defendants. To prove a civil rights conspiracy claim, Plaintiff must show that he suffered an actual deprivation of his constitutional rights. *See Ridgewood Bd. Of Educ. v. N.E. ex rel. M.E.*, 172 F.3d 238, 254 (3d Cir. 1999) ("In order to prevail on a conspiracy claim under § 1983, a plaintiff must prove that persons acting under color of state law conspired to deprive him of a federally protected right ."); *Fioriglio v. City of Atlantic City*, 996 F. Supp. 379, 385 (D.N.J.1998) ("[A] § 1983 conspiracy claim is not actionable without an actual violation of § 1983."). Here, Plaintiff's conspiracy claim relies on his underlying malicious prosecution claim. Since he fails to state a claim for malicious prosecution, the § 1983 conspiracy claim fails as well.

Similarly, Plaintiff's claims against the Township of Monroe fails because the Court has dismissed his underlying civil rights claims against the Officer Defendants.[5] *See Mulholland v. Gov't County of Berks, Pa.*, 706 F.3d 227, 238 n. 15 (3d Cir.2013) ("It is well-settled that, if there is no violation in the first place, there can be no derivative municipal claim.") (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986)). Moreover, municipal liability under § 1983 may not be asserted under a *respondeat superior* theory of liability but must instead be founded on allegations that the government itself supported a violation of constitutional rights. *See Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). Municipal liability

---

[5] Plaintiff has also sued the Township of Monroe Police Department, but this entity is not a proper defendant under § 1983. In § 1983 actions, "police departments cannot be sued in conjunction with municipalities, because the police department is merely an administrative arm of the local municipality, and is not a separate judicial entity." *Padilla v. Township of Cherry Hill*, 110 F. App'x. 272, 278 (3d Cir. 2004). The Court therefore dismisses the Township of Monroe Police Department and considers Plaintiff's claims against the Township only.

exists where execution of the municipality's policy or custom, whether made by lawmakers or decisionmakers whose edicts may fairly represent official policy, inflict the injury. *Id.* at 694.

Under Third Circuit law, when a plaintiff brings a complaint under *Monell* against a municipality, the specific offending custom, policy, or practice must be pleaded in the complaint. *See McTernan v. City of York*, 564 F.3d 636, 638 (3d Cir. 2009) ("To satisfy the pleading standard, [a plaintiff] must identify a custom or policy and specify what exactly that custom or policy was.") (citing *Philips v. County of Allegheny*, 515 F.3d 224 (3d Cir. 2008)). In addition, a plaintiff must also allege that the policy or custom was the "proximate cause" of his injuries, *see Estate of Roman v. City of Newark*, 914 F.3d 789, 798 ( 3d Cir. 2019) (citing *Kneipp v. Tedder*, 95 F.3d 1199, 1213 (3d Cir. 1996), "by demonstrating an 'affirmative link' between the policy or custom and the particular constitutional violation he alleges. *See id.* (citing *Bielevicz v. Dubinon*, 915 F.2d 845, 851 (3d Cir. 1990)). At the pleading stage, this generally requires some facts that tend to show that policymakers were aware of similar unlawful conduct in the past, but failed to take precautions against future violations, and that this failure, at least in part, led to the injuries in question. *See id.*

A *Monell* claim may also be premised on a municipality's failure to train, supervise, and discipline. To plead a claim based on failure to train (and/or supervise and/or discipline), a plaintiff "must demonstrate that a city's failure to train its employees 'reflects a deliberate or conscious choice.'" *Estate of Roman,* 914 F.3d at 798-800 (quoting *Brown v. Muhlenberg Township*, 269 F.3d 205, 215 (3d Cir. 2001)). Deliberate indifference is plausibly pled by showing that "(1) municipal policy makers know that employees will confront a particular situation, (2) the situation involves a difficult choice or a history of employees mishandling, and

8

(3) the wrong choice by an employee will frequently cause deprivation of constitutional rights."[6] *Id.* at 798 (quoting *Doe v. Luzerne County*, 660 F.3d 169, 180 (3d Cir. 2011) (internal brackets omitted)).

Here, the Court has dismissed without prejudice the Fourth Amendment claims against the individual Officer Defendants, and there are no facts to suggest that a specific policy or custom or a failure to train and/or supervise caused the alleged harms at issue. As such, the *Monell* claims against the Township of Monroe are also dismissed without prejudice.

Finally, the Court will dismiss without prejudice the § 1983 claims against Defendant DeMatteo because he is a private individual and there are no allegations that he was acting under color of state law when he called the police to report that Plaintiff was exposing himself to customers at Walmart. A private party may be a state actor under § 1983 where the private party is a "willful participant in joint action with the State or its agents." *Lugar v. Edmonson Oil Co.*, 457 U.S. 922, 941 (1982). In order to establish the requisite level of joint participation and collaboration, the plaintiff must aver:

> the existence of a pre-arranged plan [between the police and a private entity] by which the police substituted the judgment of [a] private part[y] for their own official authority. Absent allegations ... tending to show such a plan, [a private entity cannot] be said to have engaged in the 'concerted' or 'joint action' with the police necessary to bring them within the scope of a § 1983 claim.

---

[6] In some instances, "the need for training can be said to be so obvious, that failure to do so could properly be characterized as deliberate indifference to constitutional rights even without a pattern of constitutional violations." *Thomas v. Cumberland County*, 749 F.3d 217, 223 (3d Cir. 2014) (citing *City of Canton, Ohio*, 489 U.S. at 390 n. 10). "Liability in single-incident cases depends on '[t]he likelihood that the situation will recur and the predictability that an officer lacking specific tools to handle that situation will violate citizens' rights.'" *Id.* at 223-24 (quoting *Bd. of Cty. Com'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 409 (1997)).

*Cruz v. Donnelly*, 727 F.2d 79, 80 (3d Cir. 1984) (citations omitted).  Merely reporting a crime does not transform a private citizen into a state actor for the purposes of 42 U.S.C. § 1983.  *See, e.g., Talbert v. Sembrot*, No. 18-2270, 2018 WL 4680268, at *2 (E.D. Pa. Sept. 28, 2018).  Here, there are no allegations of concerted or joint action between the police and DeMatteo, and the Court will dismiss without prejudice the § 1983 claims against this Defendant.

Having dismissed the Complaint in its entirety, the Court will permit Plaintiff to submit an Amended Complaint to the extent he can provide facts to cure the deficiencies in his claims.  *See Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 251 (3d Cir. 2007) (holding that in civil rights cases, the Court must allow amendment, unless doing so would be inequitable or futile).  Because it is conceivable that Plaintiff can cure the deficiencies in the claims against the Defendants, he may file an Amended Complaint and a request to reopen this matter within 45 days of the date of this Memorandum and Order.[7]

**IT IS, THEREFORE**, on this 1st day of November, 2021,

**ORDERED** that Plaintiff's application to proceed *in forma pauperis* is **GRANTED** (ECF No. 1-1); and it is further

**ORDERED** that the Complaint shall be filed; and it is further

**ORDERED** that, pursuant to 28 U.S.C. § 1915(b) and for purposes of account deduction only, the Clerk shall serve a copy of this Order by regular mail upon the Attorney General of the State of New Jersey and the Administrator of South Woods State Prison; and it is further

---

[7] Plaintiff should note that when an amended complaint is filed, it supersedes the original and renders it of no legal effect, unless the amended complaint specifically refers to or adopts the earlier pleading.  *See West Run Student Housing Associates, LLC v. Huntington National Bank*, 712 F.3d 165, 171 (3d Cir. 2013)(collecting cases).  To avoid confusion, the safer practice is to submit an amended complaint that is complete in itself.  *Id.*

**ORDERED** that Plaintiff is assessed a filing fee of $350.00 and shall pay the entire filing fee in the manner set forth in this Order pursuant to 28 U.S.C. § 1915(b)(1) and (2), regardless of the outcome of the litigation, meaning that if the Court dismisses the case as a result of its *sua sponte* screening, or Plaintiff's case is otherwise administratively terminated or closed, § 1915 does not suspend installment payments of the filing fee or permit refund to the prisoner of the filing fee, or any part of it, that has already been paid; and it is further

**ORDERED** that pursuant to *Bruce v. Samuels*, 136 S. Ct. 627, 632 (2016), if Plaintiff owes fees for more than one court case, whether to a district or appellate court, under the Prison Litigation Reform Act (PLRA) provision governing the mandatory recoupment of filing fees, Plaintiff's monthly income is subject to a simultaneous, cumulative 20% deduction for each case a court has mandated a deduction under the PLRA; *i.e.*, Plaintiff would be subject to a 40% deduction if there are two such cases, a 60% deduction if there are three such cases, etc., until all fees have been paid in full; and it is further

**ORDERED** that pursuant to 28 U.S.C. § 1915(b)(2), in each month that the amount in Plaintiff's account exceeds $10.00, the agency having custody of Plaintiff shall assess, deduct from Plaintiff's account, and forward to the Clerk of the Court payment equal to 20% of the preceding month's income credited to Plaintiff's account, in accordance with *Bruce*, until the $350.00 filing fee is paid. Each payment shall reference the civil docket numbers of the actions to which the payment should be credited; and it is further

**ORDERED** that the Complaint is dismissed in its entirety pursuant to 28 U.S.C. 1915(e)(2)(B) for failure to state a claim for relief; and it is further

**ORDERED** that Plaintiff may submit an Amended Complaint and move to reopen this matter within 45 days of the date of this Memorandum and Order to the extent he can cure the deficiencies in his Complaint; and it is further

**ORDERED** that if Plaintiff fails to submit an Amended Complaint within 45 days, this dismissal will automatically convert to a dismissal with prejudice; and it is further

**ORDERED** that the Clerk of the Court shall send a copy of this Memorandum and Order to Plaintiff at the address on file and CLOSE this matter accordingly.

/s/ Freda L. Wolfson
Freda L. Wolfson
U.S. Chief District Judge